UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
JULIO MEREJILDO,                    :

                                  :    **ORDER AND OPINION DENYING**
             Petitioner,       :    **PETITION FOR WRIT OF**
                                  :    **HABEAS CORPUS**
      -against-             :
                                  :    05 Civ. 3111 (AKH)
DENNIS J. BRESLIN, Superintendent,  :
Arthur Kill Correctional Facility,     :
                                :
                Respondent.      :
------------------------------------------------------x
ALVIN K. HELLERSTEIN, U.S.D.J.:

          On March 23, 2005, Petitioner, proceeding pro se, filed a petition for a

writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he was being held in state

custody in violation of his federal constitutional rights.  Petitioner had been convicted, after a

guilty plea, in the New York Supreme Court on December 10, 1999 of criminal possession of a

controlled substance in the second degree, a violation of N.Y. Penal Law § 220.18, and criminal

possession of a weapon in the third degree, a violation of N.Y. Penal Law § 265.02(1).  On

February 2, 2000, Petitioner was sentenced, pursuant to a plea agreement, to consecutive terms

of eight years to life for the controlled substance conviction and two to four years for the weapon

conviction.  People v. Merejildo, 762 N.Y.S.2d 338 (1st Dep't), lv. denied, 1 N.Y.3d 540 (2003).

When this case was assigned to me, Petitioner was no longer in custody, having been released on

June 20, 2008 and deported to the Dominican Republic on July 16, 2008.

          In an order dated September 26, 2008, I noted that Petitioner's deportation and

permanent inadmissibility to the United States were collateral consequences of the underlying

New York State convictions and may provide grounds for habeas relief.  See Perez v. Greiner,

296 F.3d 123, 125 (2d Cir. 2002); Garcia v. United States, No. 06 Civ. 3115 (RJH) (GWG), 2007

WL 4371671, at *2 (S.D.N.Y. Dec. 13, 2007).  I ordered Respondent to submit Petitioner's prior

conviction record to the Court, to establish whether the petition met the case or controversy

requirement of Article III, § 2 of the United States Constitution.  See Perez, 296 F.3d at 125; De

la Rosa v. Ebert, No. 03 Civ. 9820 (AKH), 2005 WL 525650, at *3 (S.D.N.Y. Mar. 4, 2005).

Respondent submitted the record on December 11, 2008.  It showed that Petitioner's only

convictions were those that he challenged by his petition for habeas relief.  Therefore, in an order

dated December 15, 2008, I held that the petition was not moot by reason of an independent bar

to reentering the United States, and ordered Respondent to submit a response to the petition.

The issues in the present petition are whether Petitioner was subjected to an

unreasonable search and seizure, in violation of the Fourth Amendment, and a cruel and unusual

sentence, in violation of the Eighth Amendment.

The question at hand is whether the determination of the New York Supreme

Court, as affirmed, was "contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States" or "resulted

in a decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  For the reasons

stated below, Petitioner's arguments are without merit, and the petition is denied.

## I.      Background

Petitioner is originally from the Dominican Republic, where he received a tenth-

grade education.  As an adult in the United States, he worked odd jobs and earned approximately

$200 each week, much of which he sent to Santo Domingo to support his ill mother and seven

children.

On the night of June 18, 1998, Detective Christopher Acquilino and other police officers, acting on information provided by a confidential informant (C.I.), observed Petitioner leave a parking garage in upper Manhattan carrying a blue plastic shopping bag. According to police testimony, the shopping bag appeared to hold a heavy, brick-shaped object. Petitioner got into the backseat of a livery cab, driven by Jose Perez-Mateo. As the police followed the cab, Acquilino saw Petitioner repeatedly lean forward in his seat. After the cab made a U-turn and appeared to be driving back toward the parking garage, the police officers stopped the cab and ordered Petitioner and Perez-Mateo out of the vehicle. Upon noticing that the back of the front passenger seat hung loose from its frame, Acquilino pulled back some of the loose seat material from the frame and searched the area. He discovered a kilogram of cocaine in the blue plastic shopping bag that Petitioner had been holding before getting into the cab. The police arrested Petitioner and Perez-Mateo. Later, when searching Petitioner, the police recovered a parking garage claim ticket for a gold Mazda. The police obtained a search warrant for the Mazda and discovered eight pounds of cocaine and a gun in that car.

Petitioner was indicted on July 2, 1998 and charged with two counts of criminal possession of a controlled substance in the first degree, and one count of criminal possession of a weapon in the third degree.

## II.      Procedural History in the New York Supreme Court

On July 13, 1998, Petitioner moved to suppress the cocaine and gun seized by the police from the livery cab and Mazda. Petitioner argued that these items were recovered as the result of an unlawful stop and search, since the police lacked reasonable suspicion to stop the livery cab and probable cause to search the cab and plastic bag. Petitioner also requested disclosure of the search warrant for the Mazda, as well as other supporting evidence that had led

the police to make the initial stop of the livery cab and subsequent arrest.  On September 17,

1998, Justice Altman ordered a Mapp hearing in order to determine the admissibility of the

evidence recovered from the livery cab.  At such a hearing, the court determines if physical

evidence obtained by the police was illegally obtained, and, therefore, inadmissible.  See Mapp

v. Ohio, 367 U.S. 643 (1961).

   However, on October 22, 1998, the court granted the Government's motion for a

protective order denying Petitioner discovery of the search warrant, and an affidavit and other

testimony supporting the warrant, in order to protect the identity and safety of the C.I.  The

prosecutor also requested that the court review such materials ex parte and in camera, pursuant to

a Castillo hearing.  In a Castillo hearing, the court seals the materials supporting the warrant and

questions the C.I. privately to protect his or her identity.  See People v. Castillo, 80 N.Y.2d 578,

584-85 (1992); People v. Seychel, 518 N.Y.S.2d 754 (Sup. Ct. N.Y. Cty. 1987).  On February 2,

1999, Petitioner objected to the prosecutor's request for a Castillo hearing, arguing that the

request was untimely, that a Castillo hearing was inappropriate in the present case, and that a

regular Mapp hearing would still allow the prosecutor to object to questions that could reveal the

identity of the C.I.

   On March 11, 1999, the court granted the prosecutor's request to hold a Castillo

hearing instead of the ordinary Mapp hearing, and again denied discovery of the search warrant

and documents supporting the warrant.  The court agreed with the prosecutor that disclosure of

this information could reveal the identity of, and thus endanger, the C.I., who continued to

provide the police with information.  Further, the court held that the documents could not be

redacted meaningfully while still ensuring the safety of the C.I.  After acknowledging that

Castillo dealt with a search pursuant to a warrant, Justice Altman ruled that a Castillo hearing

4

was appropriate, and authorized an ex parte, in camera hearing to evaluate the stop and search of the livery cab.  Petitioner objected and argued that the search warrant was the fruit of the illegal search of the livery cab, but Justice Altman found that most of the information supporting the warrant was provided by the C.I.  Therefore, aside from the cocaine found in the livery cab, the same facts predicated both searches.  Thus, if probable cause had existed for the search of the Mazda, then there had also been probable cause to stop and search the livery cab.  Justice Altman ruled that the search warrant could be reviewed for sufficiency based only on the information provided by the C.I.  A Castillo hearing to determine the legality of the livery cab search was therefore permissible.  Petitioner provided a list of seven questions for the court to ask the C.I. during the Castillo hearing.

The court then held the Castillo hearing and, on April 22, 1999, denied Petitioner's suppression motion and concluded that the police had probable cause to stop and search the livery cab.  The court held that the subsequent search of the Mazda was constitutional because it derived from the initial search of the livery cab.  Therefore, the court concluded that the discovery of cocaine in the livery cab provided the probable cause to arrest and search Petitioner, which in turn led to the discovery of the parking garage claim ticket for the Mazda.

On June 15, 1999, Petitioner moved for reconsideration of his suppression motion, arguing that an in camera, ex parte hearing was inappropriate because, though the police had relied on confidential information, they had also relied on their own observations in choosing to stop and search the livery cab.  On July 20, 1999, the court modified its previous order and scheduled a limited, or partial, Mapp hearing to focus on the new ground raised by Petitioner, a focus that could be explored without endangering the C.I.  The court ruled that cross-examination of the Government's witnesses would be limited to the issue presented.

Another order, dated July 26, 1999, reiterated the limited nature of the <u>Mapp</u> hearing, stating that only the observations of the police prior to the arrest, separate from the information provided by the C.I., would be addressed, and that the hearing's purpose would be to determine if the police officers' observations were inconsistent with the information provided by the C.I.

The partial <u>Mapp</u> hearing was held on August 31, 1999.  Detective Acquilino, the sole witness, recounted the events that led to the stop and search of the livery cab and the subsequent discovery of the plastic bag filled with cocaine.  The court found that Detective Acquilino's testimony was not inconsistent with the information supplied by the C.I., and that the police had probable cause to search the livery cab.  The court acknowledged that because of the protective order, Petitioner could not evaluate the full basis of the finding, that Detective Acquilino's probable cause to stop the livery cab was soundly based.  The court found Detective Acquilino to be a credible witness and to have acted reasonably when he searched the back of the car seat and discovered the plastic bag containing cocaine.

On December 10, 1999, Petitioner pleaded guilty to possession of a controlled substance in the second degree, a violation of N.Y. Penal Law § 220.18, and criminal possession of a weapon in the third degree, a violation of N.Y. Penal Law § 265.02(1).  Petitioner had agreed to a plea agreement.  He stated that he was freely pleading guilty and understood that he was giving up his right to a jury trial.  Petitioner asked for leniency, stating that he had not engaged in criminal activity before and had been driven into involvement with drugs because his entire family depended on him for support.  When the court informed Petitioner that pleading guilty could lead to deportation, Petitioner responded that he would prefer deportation and asked the court to recommend deportation.

On February 2, 2000, at the sentencing hearing, Petitioner's counsel reiterated that Petitioner had accepted the plea agreement.  However, Petitioner addressed the court and argued that his sentence was too high and that his co-defendant, Perez-Mateo, had greater culpability but had received a lesser sentence.  Justice Visitacion-Lewis responded, however, that Petitioner had foregone earlier opportunities to plead to a lesser sentence and that the plea agreement that he had subsequently reached was fair.  Accordingly, the court sentenced Petitioner to eight years to life on the drug possession charge, and two to four years on the gun possession charge, to run consecutively, as stipulated in the plea agreement.

### III.    Petitioner's Appeal in State Court

Petitioner appealed to the Appellate Division, First Department, asserting three claims.  First, he argued that his right to be free from unreasonable searches and seizures had been violated because the police did not have a search warrant when they stopped and searched the livery cab, and because the trial court had denied Petitioner a full suppression hearing pursuant to Mapp.  Second, he argued that the Appellative Division should review the evidence in camera to determine if there was reasonable suspicion or probable cause to stop and search the livery cab.  Finally, he argued that his sentence was excessive.  In support of this last argument, Petitioner noted that he had no prior criminal record or involvement with drugs, and that his co-defendant had received only three years to life in prison.  The Government responded that the Castillo hearing had been necessary to protect the identity and safety of the C.I., and that the records of the Castillo hearing, which the Government provided to the Appellate Division under seal, demonstrated the reliability of the C.I.  The Government also argued that the sentence was reasonable because it resulted from a voluntary plea agreement and was substantially less than the sentence Petitioner would have received had he been found guilty at trial.  In addition, it

7

noted that Petitioner, not Perez-Mateo, had possessed eleven pounds of cocaine as well as a loaded gun, and, unlike Perez-Mateo, rejected more favorable plea offers earlier in the process.

On May 6, 2003, the Appellate Division affirmed Petitioner's conviction and sentence.  People v. Merejildo, 762 N.Y.S.2d 338 (1st Dep't 2003).  The court ruled that the "suppression motion was properly denied" because the trial court "properly concluded that the full factual predicate for the warrantless search at issue could not be disclosed without jeopardizing the confidential informant's safety."  Id. at 339.  Therefore, the court agreed that "it was necessary to conduct most of the hearing on the issue of probable cause on an ex parte, in camera basis."  Id.  The court held further that the trial court had "conducted a 'sensitive balancing' of the informant's safety against [Petitioner's] right to an adversarial proceeding" and had "employed a combination of procedures approved in Castillo and in People v. Darden[, 34 N.Y.2d 177, 181-82 (1974)]."  Id. (internal citation omitted).  These approved procedures had included a thorough examination of the C.I., in camera, with the benefit of questions submitted by the Petitioner's counsel.  Id.

The court also rejected Petitioner's argument that "Castillo-type procedures are not applicable to warrantless searches and seizures."  Id.  Rather, the court stated, it "need not decide whether a procedure comparable to Castillo could ever be employed to protect an informant's safety in the case of a purely warrantless search," because, in the present case,

> the same information provided by the informant was not only the principal basis for the warrantless search of [Petitioner's] person and vehicle in which he was riding, but it was also the principal basis for the issuance of a warrant—which, notably, defendant does not seek to controvert—for the subsequent search of a different vehicle.  Here, the hearing court properly considered the warrant, its supporting affidavit and its accompanying proceedings.

Merejildo, 762 N.Y.S.2d at 339-40.  The court did acknowledge the "unusual circumstances" of the case, but concluded that "based on the particular procedures employed by the court, [Petitioner] received a fair opportunity to litigate his suppression claim."  Id. at 340.  The court concluded that Detective Acquilino's search of the livery cab was reasonable, because

> [w]hile the court that issued the warrant was not asked to pass directly on the validity of the prior warrantless search, and it was in possession of additional information not available at the time of that search, its acceptance of the informant's reliability and basis of knowledge indirectly upheld the prior warrantless search.

Id.  The court also independently reviewed the record of the partial Mapp hearing as well as that of the Castillo hearing.  Id.  Based on this review, the court concluded that a continuing need to protect the identity and safety of the C.I. had been established and that a meaningful redaction of the records would be impossible based on this need.  Id.  The court concluded that, based on the record, the trial court had provided a fair process for considering Petitioner's suppression motion.  Id.

On the merits of the search, the Appellate Division ruled that "the People established the informant's reliability and basis of knowledge," and that "the police observations immediately prior to [Petitioner's] arrest corroborated the informant's information."  Merejildo, 762 N.Y.S.2d at 340.  Accordingly, the court found that "there was probable cause for defendant's arrest, the police lawfully searched him incident to that arrest, and they lawfully searched the vehicle pursuant to the automobile exception."  Id. (citing People v. Galak, 81 N.Y.2d 463, 467 (1993) (holding that a warrantless search of a car following an arrest is permissible if there is a nexus between the circumstances of the arrest and probable cause to search)).  The court added that there was "no basis for reducing the sentence" and that it had "considered and rejected [Petitioner's] remaining arguments."  Id.

### IV.    Petitioner's Appeal to the New York Court of Appeals

On June 11, 2003, Petitioner sought leave to appeal the Appellate Division's decision to the New York Court of Appeals, asserting the same claims made to the Appellate Division.  On June 23, 2003, Petitioner sent a letter to the Court of Appeals asking the court to order the Government to disclose the information that led to Petitioner's arrest, allowing for redactions and other measures to protect the C.I.  The Government opposed this request.  On October 2, 2003 Petitioner submitted a second supplemental leave application to the Court of Appeals, arguing that the Appellate Division had misapplied Castillo to the warrantless search in the present case and that the Court of Appeals needed to clarify the law regarding the proper procedures to follow when considering the safety of a confidential informant.  The Government again opposed Petitioner's letter, arguing that the Castillo hearing had been necessary to ensure the safety of the C.I., and therefore did not violate Petitioner's due process rights.  Petitioner responded in a reply leave application, arguing that the Court of Appeals should clarify how Castillo procedures could be applied to warrantless searches.  On November 26, 2003, the Court of Appeals denied Petitioner leave to appeal.  People v. Merejildo, 1 N.Y.3d 540 (2003).

### V.    Further Procedural History

On March 23, 2005, Petitioner, proceeding pro se, filed a petition in this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he was being held in state custody in violation of his federal constitutional rights.  On August 18, 2005, Petitioner moved, pro se, in the New York Supreme Court to vacate his conviction or modify his sentence under the Drug Law Reform Acts of 2004 and 2005, which devised a new schedule of determinate sentencing for drug felonies and allowed a narrow class of defendants serving indeterminate prison terms for certain drug felonies to apply for determinate sentences.  On Febraury 2, 2006,

the state court denied Petitioner's motion, holding that Petitioner did not meet the statutory requirements for such a re-sentencing.  On February 10, 2006, Petitioner sought leave to appeal this denial, which the Appellate Division denied on May 18, 2006.  Petitioner appealed again, but, on November 20, 2007, the Appellate Division affirmed the trial court's denial of the motion.

### VI.    Timeliness

The petition for a writ of habeas corpus is timely.  The New York Court of Appeals affirmed Petitioner's conviction on November 26, 2003.  It became final ninety days later, on February 24, 2004.  Accordingly, Petitioner had one year from that date, or until February 24, 2005, to file his petition for habeas relief.  28 U.S.C. § 2244(d)(1).  While there appears to be a dispute regarding the date of the petition, as the pro se office claims to have received and stamped the petition on February 4, 2005, though the document itself is dated February 17, 2005, by either measure the petition was filed within the one-year period and is therefore timely.

### VII.    Exhaustion

Before addressing the merits of the petition, I must determine whether Petitioner exhausted his state remedies.  Federal law requires that habeas corpus applicants exhaust the remedies available in the courts of the State, or show an absence of available State remedies or circumstances that make the State processes ineffective.  28 U.S.C. § 2254(b)(1).  To satisfy the statutory exhaustion requirement, a petitioner must have presented the same factual argument to the state courts and made all possible efforts to ensure state appellate review of his claims.  See Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981).  Petitioner also must expressly represent that he is relying on the United States Constitution as a basis for relief.  Id.  A petitioner, however,

need not cite specific provisions of the Constitution, but may refer to federal or state cases employing constitutional analysis, or make specific legal or factual allegations which fall well within the mainstream of constitutional litigation, over the course of his or her appeal in the state courts. Smith v. Duncan, 411 F.3d 340, 348 (2d Cir. 2005) (citing Daye v. Att'y Gen., 696 F.2d 186, 194 (2d Cir. 1982)). Failing to meet this standard results in the petition being procedurally barred. As described below, I hold that Petitioner has exhausted his Fourth Amendment claim, but has not exhausted his Eighth Amendment claim.

### VIII.   Legal Standard for Habeas Corpus Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") allows persons in state custody resulting from a conviction in state court to petition for federal habeas corpus relief, on the ground that their custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); see, e.g., Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (noting "federal habeas corpus relief does not lie for errors of state law"); Hawkins v. Costello, 460 F.3d 238, 244 (2d Cir. 2006). The application cannot be granted unless the petitioner has exhausted all available state court remedies, or the state remedies are absent or ineffective. Id. § 2254(b)(1). The court may deny a petition on the merits regardless of whether state remedies have been exhausted. Id. § 2254(b)(2).

The court cannot grant the writ where the state court adjudicated the claim on its merits unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d)(1)-(2). A decision is contrary to Supreme Court precedent if the state court "applies a

rule that contradicts" that precedent, or reaches a different result on facts that are "materially indistinguishable." Terry Williams v. Taylor, 529 U.S. 362, 405-06 (2000). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. It "may not issue the writ simply because [it] concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 410-11.

The court must also presume that the state court correctly determined factual issues unless the applicant rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); see Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). "[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)." Id.

## IX.    Fourth Amendment Claim

Petitioner has exhausted the claim that his Fourth Amendment right to be free from unreasonable searches and seizures was violated by Detective Acquilino's stop and search of the livery cab and seizure of cocaine. Petitioner's Appellate Division brief satisfied the standard laid out in Smith v. Duncan, 411 F.3d at 348, by expressing the claim in both federal and state constitutional terms and by referring to the United States Constitution, as well as federal and state case law that employ constitutional analysis. Petitioner also sought leave to appeal the denial of his motion to the New York Court of Appeals. Accordingly, Petitioner's Fourth Amendment claim is exhausted.

Petitioner pleaded guilty, after his motion to suppress evidence of his guilt was denied.  After pleading guilty and after he was sentenced, petitioner appealed from the denial of his motion to suppress, but the determination of the New York Supreme Court was affirmed. The question at hand is whether the determination of the New York Supreme Court, as affirmed, was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  Petitioner here is not entitled to habeas relief.

A State has to provide a defendant a "full and fair" opportunity to litigate a Fourth Amendment claim.  See Stone v. Powell, 428 U.S. 465, 495 (1976).  In such a hearing, the State should allow the defendant to confront the witnesses against him, but with due regard for the need to protect witnesses against dangers of harm and retaliation.  See Roviaro v. United States, 353 U.S. 53, 62 (1957) ("We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense.").  Courts have recognized that the "due process requirements for [such] a hearing may be less elaborate and demanding than those at the trial proper."  Castillo, 80 N.Y.2d at 582.  While a trial is "'substantive and involves constitutional and policy considerations related to the right to confrontation, due process, and fairness,'" and avoiding the wrongful conviction of the innocent, "[a] suppression motion, by contrast, 'is in a sense procedural and reflects constitutional and policy considerations designed to inhibit unreasonable intrusions on the privacy of individuals.'"  People v. Cortez, 706 N.Y.S.2d 821, 825-26 (N.Y. City Crim. Ct. 2000) (quoting People v. Goggins, 34 N.Y.2d 163, 168 (1974)).  In a suppression hearing, therefore, a "defendant's interest in availing himself of

14

the exclusionary rule may, in exceptional circumstances, be subordinated to safety precautions

necessary to encourage citizens to participate in law enforcement." Castillo, 80 N.Y.2d at 583.

Ultimately, "the issue is one to be determined in the exercise of . . . sound discretion by the Trial

Judge." Goggins, 34 N.Y.2d at 169 (citing Roviaro, 353 U.S. at 61 n. 9).

      In the case at hand, the police claimed that they had reasonable suspicion to

believe that Petitioner was involved in distribution of drugs, to follow him when they saw him

carry a blue plastic shopping bag with a heavy object inside and enter a livery cab and, based on

that information and their observations of the cab and petitioner, stop and search the livery cab.

Under New York State law, petitioner had the right to challenge whether, indeed, the suspicions

of the police were reasonable, by requesting a Mapp hearing.

      The prosecutor expressed concern for the safety of the confidential informant.

Where such concern exists, and the C.I.'s information provides the basis for a search warrant, the

New York Supreme Court may review, ex parte and in camera, the information that provides the

basis for a search warrant. See Castillo, 80 N.Y.S.2d at 584-85. However, no procedure exists

in New York to evaluate whether the confidential informant's information can be the basis of

reasonable suspicion for a stop and search. Nevertheless, New York courts have extended

Castillo's reasoning to allow in camera, ex parte review of information provided by a C.I.

pertaining to warrantless arrests. See Cortez, 706 N.Y.S.2d at 824-27 (citing People v. Lee, 613

N.Y.S.2d 675 (2d Dep't), lv. denied, 84 N.Y.2d 828 (1994)). Justice Altman properly held a

Castillo hearing in the unique circumstances of the present case in order to protect the identity

and safety of the C.I.

      In his appellate brief, Petitioner cited Powell and other Supreme Court cases for

the proposition that evidence acquired by unconstitutional means, as determined by a pretrial

suppression hearing, must be excluded at trial in order to discourage police misconduct.  See

Petitioner's Brief at 19.  However, in Powell, the Court also recognized that there was no reason

to believe "that the overall educative effect of the exclusionary rule would be appreciably

diminished if search-and-seizure claims could not be raised in federal habeas corpus review of

state convictions."  428 U.S. at 493.  The Court concluded that

> where the State has provided an opportunity for full and fair litigation of a
> Fourth Amendment claim, a state prisoner may not be granted federal
> habeas corpus relief on the ground that evidence obtained in an
> unconstitutional search or seizure was introduced at his trial.  In this
> context the contribution of the exclusionary rule, if any, to the effectuation
> of the Fourth Amendment is minimal and the substantial societal costs of
> application of the rule persist with special force.

Id. at 494-95.  Since Petitioner pleaded guilty and was duly convicted, his only recourse is to

argue that he was denied "an opportunity for full and fair litigation" of his Fourth Amendment

claims.  The Court of Appeals held that a petitioner would be denied such an opportunity only

"(a) if the state has provided no corrective procedures at all to redress the alleged fourth

amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant

was precluded from using that mechanism because of an unconscionable breakdown in the

underlying process."  Cappellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992) (citations omitted).  An

unconscionable breakdown may occur when "the [state] process furnished was 'claimed to be

meaningless [because] the totality of state procedures allegedly did not provide rational

conditions for inquiry into federal-law . . . questions.'"  Id. at 70 (quoting Paul M. Bator, Finality

in Criminal Law and Federal Habeas Corpus for State Prisoners, 76 Harv. L. Rev. 441, 457

(1963)); see Castillo v. Miller, No. 04 Civ. 6157 (GEL) 2005 U.S. Dist. LEXIS 8014, at *15-16

(S.D.N.Y. Apr. 28, 2005).  Examples of such a breakdown would include bribery of a trial judge,

the prosecution's knowing use of perjured testimony, a guilty plea extracted by torture, or a

conviction obtained after a trial that was dominated by an angry mob.  See Gordon Mehler, John

Gleeson, & David C. James, Federal Criminal Practice: A Second Circuit Handbook 373-74

(LexisNexis 2009 ed.); see also Cappellan, 975 F.2d at 70.

        The trial court provided corrective procedures to redress Petitioner's allegations

of Fourth Amendment violations, in the form of both a Castillo hearing as well as a limited Mapp

hearing.  Petitioner's only possible argument would be that an "unconscionable breakdown in the

underlying process" took place, precluding him from receiving a full and fair opportunity to

litigate his constitutional claim.  However, such an argument would not have merit.  The trial

court properly held a Castillo hearing to test Detective Acquilino's reasonable suspicion to stop

and search the livery cab.  Petitioner litigated this claim fully and fairly, and the opinion of the

Appellate Division did not fail to use "'a reasoned method of inquiry into relevant questions of

facts and law'" so as to constitute an "unconscionable breakdown in the underlying process."

Capellan, 975 F.2d at 71 (citation omitted).  The Appellate Division affirmed the trial court's

decision to hold a Castillo hearing, and conducted its own in camera review, at Petitioner's

request, of the information provided by the C.I.  After its independent review, the Appellate

Division determined that the C.I. was reliable and that Detective Acquilino had probable cause

for his stop and search of the livery cab.  Although Detective Acquilino's stop and search of the

livery cab occurred without a warrant, the Appellate Division's in camera examination added

another layer of review to the information provided by the C.I.  Accordingly, Petitioner had a full

and fair opportunity to litigate his Fourth Amendment claim, and the state courts did not

contradict or unreasonably apply Supreme Court precedent.  Indeed, this Court's second

guessing of the Appellate Division's opinion, rather than that court's decision itself, would

contradict the spirit of Powell.  As the Court of Appeals explained,

> Even if [Petitioner] were correct in his allegation that the Appellate
> Division erroneously decided this issue, a petitioner cannot gain federal
> review of a fourth amendment claim simply because the federal court may
> have reached a different result.  Indeed, if we were to read Powell as
> requiring us to focus on the correctness of the outcome resulting from the
> application of adequate state court corrective procedures, rather than on
> the existence and application of the corrective procedures themselves, we
> would be assuming, implicitly at least, that state courts were not
> responsible forums in which to bring constitutional claims such as is
> presented herein. Yet, Powell expressly discourages us from making any
> such assumption.

Capellan, 975 F.2d at 71; see id. ("[W]e are unwilling to assume that there now exists a general

lack of appropriate sensitivity to constitutional rights in the trial and appellate courts of the

several States." (quoting Powell, 428 U.S. at 493-94 n.35)).  The Appellate Division's

independent, in camera review of the materials considered by the trial court at its Castillo hearing

sufficed to safeguard Petitioner's procedural and Fourth Amendment rights through a thorough

state court process.  Though Petitioner maintains that the Appellate Division's ruling was

incorrect, this Court, in accordance with Powell, lacks the authority to grant habeas relief "since

a mere disagreement with the outcome of a state court ruling is not the equivalent of an

unconscionable breakdown in the state's corrective process."  Capellan, 975 F.2d at 72.

   The Appellate Division also took into consideration the holding of Alderman v.

United States, 394 U.S. 165, 182-83 (1969), which held that a petitioner should himself be

entitled to view surveillance records, and not rely on in camera review by a judge.  Merejildo,

762 N.Y.S.2d at 340.  However, the Court noted that Alderman did not change earlier decisions

approving in camera hearings for confidential informants and in other appropriate circumstances.

Alderman, 394 U.S. at 182-83 n. 14.  Therefore, the Appellate Division's ruling was not

"contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Accordingly, I deny Petitioner's Fourth Amendment claim.

### X.   Eighth Amendment Claim

Petitioner has not exhausted his Eighth Amendment cruel and unusual punishment claim, and therefore it is procedurally barred.  "[A] prisoner's reliance on a state procedural law granting courts discretionary authority to reduce sentences does not 'fairly present' a federal constitutional claim in state court."  Edwards v. Marshall, 589 F. Supp. 2d 276, 290 (S.D.N.Y. 2008) (citing Acosto v. Giambruno, 326 F. Supp. 2d 513, 521-22 (S.D.N.Y. 2004); see Castillo v. Abrams, 88 Civ. 1165 (MGC), 1988 U.S. Dist. LEXIS 9448 at *2 (S.D.N.Y. Aug. 24, 1988) ("Asking a state court to use its discretionary authority to reduce a sentence [under N.Y. Crim. Pro. Law § 470.15(2)(c) & 3(c)], without more, is not enough to alert the court that the claim is of constitutional dimension.").

In his Appellate Division brief, Petitioner merely argued that his sentence was "excessive" considering various mitigating circumstances, such as his lack of a criminal record or previous involvement with drugs, his financial responsibility for his family, and the lesser sentence that his co-defendant received.  Petitioner did not refer to the U.S. Constitution when addressing this claim nor did he use phrases such as "cruel and unusual punishment" or "grossly disproportionate," as one might expect if the claim were alleging facts which could call to mind a constitutional issue.  See Smith, 411 F.3d at 348 (citing Daye, 696 F.2d at 194).  Petitioner acknowledged that the "crimes here were serious" but argued that "there are several factors in this case which indicate that a sentence less than the aggregated 10-year-to-life prison term imposed would have been appropriate."  Petitioner's Brief at 31.  Far from declaring that any constitutional rights had been violated or any grossly disproportionate sentence had occurred,

Petitioner argued for a reduced sentence in order to adequately balance a "punitive and deterrent message" with a desire to "reintegrate [Petitioner] into society to become a productive member of the community."  Id. at 34.

In his brief, Petitioner concluded, "Without finding that the lower court abused its discretion, this Court may exercise its 'broad, plenary power to modify a sentence that is unduly harsh or severe under the circumstances.'"  Id. (citations omitted).  Petitioner, therefore, failed to argue that the lower court abused its discretion, let alone violated his constitutional right to be free from cruel and unusual punishment.  Indeed, the state cases that Petitioner cited neither refer to the U.S. Constitution nor engage in constitutional analysis.  Rather, they stand for the proposition that the Appellate Division may, in the interests of justice and pursuant to state law, reduce an "unduly harsh or severe" sentence imposed by a lower court, even when the lower court did not abuse its discretion and imposed a sentence within the acceptable statutory range. See, e.g., People v. Delgado, 80 N.Y.2d 780, 782 (1992); People v. Maier, 477 N.Y.S.2d 164 (1st Dep't 1984).

Since Petitioner did not adequately raise this constitutional claim during his direct appeal, his only recourse would be to show that there was good cause or actual prejudice, which prevented him from exhausting his state court remedies.  See Aparicio v. Artuz, 269 F.3d 78, 89-90 (2d Cir. 2001).  In the alternative, Petitioner could argue that a fundamental injustice would occur if his claims were not considered on the merits.  See id.  Petitioner has not made any of these arguments, nor has he argued that he received constitutionally ineffective assistance of counsel.  Accordingly, Petitioner's Eighth Amendment claim is unexhausted.

Even if it had been exhausted, however, the Eighth Amendment claim has no merit.  "[N]o federal constitutional issue is presented where . . . the sentence is within the range

prescribed by state law."  White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); see also Ewing v. California, 538 U.S. 11, 25 (2003) ("Selecting the sentencing rationales is generally a policy choice to be made by state legislatures, not federal courts.").  While the Supreme Court has acknowledged that the Eighth Amendment "encompasses a narrow proportionality principle," the Court has only invalidated extreme, non-capital sentences for being "'grossly disproportionate' to the crime."  Harlem v. Michigan, 501 U.S. 957, 997, 1001 (1991) (holding that a sentence of life imprisonment without parole for possession of at least 650 grams of cocaine was not "grossly disproportionate").  This proportionality principle has overturned non-capital sentences only in extraordinary cases.  See Lockeyer v. Andrade, 538 U.S. 63, 77 (2003); United States v. Yousef, 327 F.3d 56, 163 (2d Cir. 2003) (noting that lengthy prison sentences based on statutorily-mandated consecutive terms do not violate the Eighth Amendment).

Here, Petitioner's sentence was well within the statutory range for each conviction.  Petitioner pleaded guilty to second-degree Criminal Possession of a Controlled Substance, an A-II felony (N.Y. Penal Law § 220.18), and third-degree Criminal Possession of a Weapon, a class D felony (N.Y. Penal Law § 265.02(1)).  For the A-II felony, Petitioner was sentenced to eight years to life, to run consecutively with the two-to-four year sentence he received for the class D felony.  However, for the A-II felony alone, Petitioner could have received a maximum sentence of life imprisonment, while for the class D felony, Petitioner faced a maximum of seven years in prison.  Petitioner's sentence, therefore, fell well within the acceptable ranges established by the New York legislature, and, far from being grossly disproportionate, matched the seriousness of the crimes.  Accordingly, even if Petitioner's direct appeal could be construed as containing an Eighth Amendment claim, such a claim fails on the merits.

## XI.    Conclusion

For the reasons stated above, I hold that the challenged state court decisions were neither contrary to, nor involved unreasonable applications of, clearly established Supreme Court precedent. Nor were those decisions based on an unreasonable determination of the facts. The petition for a writ of habeas corpus is denied. I deny a certificate of appealability, for there has not been a substantial showing of the denial of a constitutional right. Lozada v. United States, 107 F.3d 1011, 1016-17 (2d Cir. 1997), abrogated on other grounds by United States v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997). The Clerk shall mark the case as closed.

SO ORDERED.

Dated:       July ___, 2009
             New York, New York

ALVIN K. HELLERSTEIN
United States District Judge

22